IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                    :
COLLEEN DEEGAN-PRICE, et al.
 Plaintiff                          :

       v.                           :  Civil Action No. DKC 2005-3034

                                    :

KOLA FAJANA, et al.
  Defendant                         :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Housing Act case are the motions to dismiss for failure to state a claim by Defendants Timothy G. Kizzie and RE/MAX Sails, Inc. ("RE/MAX") (paper 8), and by Defendants Kola Fajana and Link Mortgage, LLC, (paper 11). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the motions of will be granted, albeit with leave to amend in part.

**I.    Background**

The following facts are alleged by Plaintiffs Colleen J. Deegan-Price and James E. Price, Jr. Plaintiffs are husband and wife. Timothy G. Kizzie, a real estate agent working for RE/MAX, contacted Plaintiffs in May 2004[1] and offered to assist them with purchasing a home. On or about December 12, 2004, Kizzie showed Plaintiffs a home in Bowie, Maryland, for which Kizzie was the listing agent. The parties agreed that Kizzie would serve as

---

[1] The complaint actually provides the date of "May, 2005," but the year must be a typographical error.

Plaintiffs' real estate agent.   Plaintiffs allege that Kizzie thereafter referred them to Defendant Kola Fajana, the owner/agent of Link Mortgage, in order to obtain financing for Plaintiffs' planned purchase of the Bowie home.   Plaintiffs contacted Fajana by telephone, who agreed to serve as Plaintiffs' mortgage lender, and they provided Fajana with their financial information.

On December 14, 2004, Kizzie and Fajana jointly telephoned Plaintiffs' residence to discuss their loan application to purchase the Bowie home.   Plaintiffs were not home and their answering machine received the call.   While being recorded, Kizzie and Fajana discussed various topics.   Plaintiffs allege that Fajana inquired as to both Plaintiffs' races, to which Kizzie responded that James Price, Jr., was "black," that Colleen Deegan-Price was "white," and the Plaintiffs' minor child was "mixed."   (Paper 1, ¶ 28). Plaintiffs allege that Kizzie stated that "when a black man marries a white woman they don't always chose the best one." (Paper 1, ¶ 29).   Fajana then allegedly inquired as to whether Colleen Deegan-Price was "fat," to which Kizzie responded that she was "not fat, however, she was old." (Paper 1, ¶ 31).   Colleen Deegan-Price and her minor child subsequently listened to the recording in its entirety when they returned home.   James Price, Jr., later listened to the recording.

James Price, Jr., contacted Kizzie and informed him that Plaintiffs had heard Kizzie and Fajana's comments.   Plaintiffs

allege that they then attempted to schedule a meeting with Kizzie and that Kizzie did not show Plaintiffs other homes.  Plaintiffs also allege that they attempted to schedule several meetings with Fajana, who refused to meet with them, and that Fajana suggested that Plaintiffs meet with Kizzie instead.  Plaintiffs state that they "discontinue[d] their effort to obtain a loan through Defendant Fajana and Link Mortgage, LLC."  (Paper 1, ¶ 39).  Plaintiffs allege that they lost the opportunity to purchase the Bowie home as a result.

Plaintiffs filed a complaint in this court on November 8, 2005, alleging the following claims: (1) Count I, a violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604-3605; (2) Count II, intentional infliction of emotional distress pursuant to Maryland common law; and (3) Count III, vicarious liability against RE/MAX and Link Mortgage for the acts of Kizzie and Fajana, respectively.[2]  On December 27, 2005, Kizzie and RE/MAX moved to dismiss Plaintiffs' complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).  On January 23, 2006, Fajana and Link Mortgage moved to dismiss Plaintiffs' complaint on the same grounds.

---

[2] Plaintiffs initially named RE/MAX owner Larry Jarboe as a Defendant.  Upon request for clarification from the court, (paper 14), Plaintiffs' counsel confirmed that Jarboe was not being sued separate from RE/MAX, (paper 15). Jarboe is thus no longer named as an individual defendant.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th

---

[3] The United States Court of Appeals for the Fourth Circuit "has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (holding dismissal proper where plaintiff did not allege facts in support of all of the required elements of a discrimination claim), *cert. denied*, 540 U.S. 940 (2003).  Only the presence of alleged facts, and not simply legal conclusions, will allow a Plaintiff to present a proper claim for relief.  *Id.*

4

Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A.    Fair Housing Act Claim

Plaintiffs allege that Defendants violated § 3604 and § 3605 of the FHA by discriminating against them on the basis of their "race, color, sex, and familial status."[4]  (Paper 1, ¶ 43).  The FHA, also known as Title VIII of the Civil Rights Act of 1968, prohibits public and private parties from engaging in certain discriminatory activities as part of ensuring "fair housing throughout the United States."  42 U.S.C. § 3601.  Section 3604 of the FHA makes it unlawful:

---

[4] "Familial status," as used in the FHA, means "one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person."  42 U.S.C. § 3602(k).

5

(a) to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a)-(b).  Section 3605 of the FHA makes it unlawful for those whose business includes providing residential loans or other financial assistance, 42 U.S.C. § 3605(b)(1), "to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin," 42 U.S.C. § 3605(a).  The FHA provides that an aggrieved person may commence a civil action in order to obtain appropriate relief.  42 U.S.C. § 3613(a)(1)(A).

Because Plaintiffs' allegations on this count differ with respect to Kizzie (and his employer RE/MAX) and Fajana (and his employer Link Mortgage), the claims against the two sets of defendants are discussed separately.

### 1.  Claim Against Defendant Kizzie and RE/MAX Sails, Inc.

Plaintiffs' FHA claim against Kizzie and RE/MAX is apparently premised on violations of both 42 U.S.C. § 3604(a) and § 3604(b).[5]

_____

[5] Plaintiffs' complaint alleges violations of § 3604 and § 3605 against all Defendants generally.  Section 3605 does not
(continued...)

To allege a violation of § 3604(a), Plaintiffs "must assert, first, that [Defendants] denied or made housing unavailable to [Plaintiffs] and, second, that [Defendants'] actions were based on [Plaintiffs'] race, color, or national origin." *Edwards v. Johnston County Health Dep't*, 885 F.2d 1215, 1221 (4th Cir. 1989). To allege a violation of § 3604(b), Plaintiffs must assert that Defendants discriminated in the provision of services in connection with a dwelling, and that Defendants' actions were based on Plaintiffs' membership in a protected class. *Id.* at 1224. The Fourth Circuit has explained that in order to survive a motion to dismiss a § 3604 claim, a plaintiff must allege that a defendant acted with a "discriminatory intent" or that a defendant's action has a "disproportionate adverse impact on minorities." *Id.* at 1223.[6]

Plaintiffs have failed to allege sufficient facts to state a claim for relief under the FHA against Kizzie and RE/MAX. Nowhere in their complaint do Plaintiffs allege that Kizzie or any other employee of RE/MAX took any action or refused to act because of their membership in a protected class. Kizzie had already met with

---

[5](...continued)
appear to encompass the conduct of Kizzie and RE/MAX, however, because they were not acting as commercial lenders. Plaintiffs' opposition memorandum, (paper 10), references only § 3604(b), but the language of the complaint tracks the language of both § 3604(a) and § 3604(b).

[6] Plaintiffs do not in any sense allege a disparate adverse impact.

Plaintiffs prior to the phone call in which race was discussed, and obviously was already aware of their genders, races, and familial status, and continued to act as their real estate agent. Furthermore, the complaint only alleges that they "attempt[ed] to schedule a meeting" with Kizzie,[7] (Paper 1, ¶ 37), and that they were not shown any other homes by Kizzie.  The complaint does not allege that they requested such a service or that Kizzie refused any such request to show them other houses or meet with them. Accordingly, Plaintiffs' FHA claim against Kizzie will be dismissed.

### 2.   Claim Against Defendant Fajana and Link Mortgage, LLC

It is unclear which section of the FHA that Fajana and Link Mortgage are alleged to have violated.  Plaintiffs' FHA claim against Fajana and Link Mortgage is apparently premised on violations of 42 U.S.C. § 3605(a) and § 3605(b), which prohibit discrimination in residential lending against members of a protected class.  Plaintiffs' complaint generally references both § 3604 and § 3605, (paper 1, ¶ 43), but their opposition memoranda lacks any reference to § 3605.  Nevertheless, because the language of § 3605 explicitly covers lending, most FHA claims against

---

[7] Plaintiffs' opposition memorandum (paper 10), alleges that he "refused to meet with them." The proper focus of a motion to dismiss is on the Plaintiffs' complaint, not the Plaintiffs' response to a motion to dismiss.  *Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md. 2000), although additional proffered facts might affect whether leave to amend is granted.

mortgage lenders have been decided under § 3605 rather than § 3604. *See, e.g.*, *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056 (8th Cir. 2003); *Frison v. Ryan Homes*, No. Civ.A. AW-04-350, 2004 WL 3327904, at *5 (D.Md. 2004).

In contrast to the allegations with respect to Kizzie, Plaintiffs assert in their complaint that Kajana *refused* to meet with them after "several" attempts at scheduling a meeting failed. (Paper 1, ¶¶ 38-39). Yet, like with Kizzie and RE/MAX, Plaintiffs have failed to conform to the Fourth Circuit's requirement that they allege that the refusal was *because of* Plaintiffs' membership in a protected class. 42 U.S.C. §§ 3605(a), (b); *Edwards*, 885 F.3d at 1223. The facts might support such an allegation. Plaintiffs allege that following the phone call, Fajana refused to meet with them regarding their loan. Moreover, unlike Kizzie, Fajana did not know of the Plaintiffs' races and familial status before the phone call and he was the one to raise the subject.[8] Accordingly, Plaintiffs' FHA claim will be dismissed as to Fajana and Link Mortgage.

**B.    Intentional Infliction of Emotional Distress**

In count II of their complaint, Plaintiffs assert a claim for intentional infliction of emotional distress ("IIED") based on the

---

[8] Fajana was presumably aware of the Plaintiffs' genders before the phone call.

"acts of Defendants."[9]   Liability for IIED under Maryland law will be found only if all of the following elements are satisfied: (1) the defendant's conduct is "intentional or reckless"; (2) the conduct is "extreme and outrageous"; (3) there is a "causal connection between the wrongful conduct and the emotional distress"; and (4) the plaintiff's emotional distress is severe. *Harris v. Jones*, 281 Md. 560, 566 (1977).   The Court of Appeals of Maryland has noted that, with respect to IIED, "recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves."   *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46 (1986)).   The elements of the tort are "rigorous, and difficult to satisfy."   *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992); *see Batson v. Shiflett*, 325 Md. 684, 734 (1992) (identifying only three "truly egregious" cases in which IIED claims have been upheld).

Plaintiffs' complaint alleges that Kizzie and Fajana acted "willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiffs

---

[9]   Plaintiffs' complaint does not indicate whether the statements recorded on the phone message or the Defendants' alleged refusal to meet with them regarding the Bowie home are the "acts" related to their IIED claim.   Plaintiffs' opposition memoranda suggest that the recorded message is central to this claim. Nevertheless, even if the failure to meet with the Plaintiffs provided the basis for this claim, it would still not satisfy the "extreme and outrageous" element under Maryland law.

and/or done in reckless disregard of the probability of causing Plaintiffs emotional distress." (Paper 1, ¶ 46). As for the first element of IIED, Maryland law requires a plaintiff to allege that "the defendant either *desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from his conduct, or acted recklessly in deliberate disregard *of a high degree of probability* that the emotional distress will follow." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989). Mere negligence does not satisfy this element of the tort. *Silvera v. Home Depot U.S.A., Inc.*, 189 F.Supp.2d 304, 312 (D.Md. 2002) (applying Maryland law). Plaintiffs' complaint alleges only legal conclusions. Plaintiffs do not allege that Kizzie and Fajana were aware that Plaintiffs' answering machine was recording their statements or any other facts to indicate Kizzie and Fajana acted deliberately or recklessly.

The second element of an IIED claim, requiring that the challenged conduct be extreme and outrageous, constitutes, "in large respect, the entire tort." *Weathersby*, 326 Md. at 670 (1992). To qualify as extreme and outrageous, a defendant's conduct must "go beyond all possible bounds of decency," or be "utterly intolerable in a civilized community." *Harris*, 281 Md. at 567 (quoting Restatement (Second) of Torts, ch. 2, Emotional Distress, § 46 cmt. d (1965)). Moreover, "it is for the court to determine, in the first instance, whether the defendant's conduct

11

may reasonably be regarded as extreme and outrageous." *Id.* at 569.

Plaintiffs fail to allege conduct that was extreme or outrageous. Plaintiffs allege that Kizzie said that "when a black man marries a white woman they don't always chose the best one," and that he referred to Colleen Deegan-Price as "old." (Paper 1, ¶¶ 29, 31). Defendants' conduct does not rise to a level necessary under Maryland law to satisfy the second element of IIED. Liability for IIED in Maryland simply does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Harris*, 281 Md. at 567 (denying relief to an employee who was verbally and physically mocked by an employer over a five-month period). Accordingly, Defendants' motions to dismiss the IIED claim will be granted.

## C. Vicarious Liability

Count III of Plaintiffs' complaint asserts a claim of vicarious liability against RE/MAX and Link Mortgage, the employers of Kizzie and Fajana, respectively. The vicarious liability claim incorporates Plaintiffs' FHA and IIED claims and is wholly based upon the conduct of the two employees. (Paper 1, ¶¶ 49-52). Employers are liable under the FHA for the discriminatory actions of their employees that are done within the scope of employment. *Walker v. Crigler*, 976 F.2d 900, 904 n.5 (4th Cir. 1992). Likewise, employers are liable for the tortious conduct of their employees done within the scope of their employment. *See Oaks v. Connors*,

12

339 Md. 24, 30 (1995).   Yet, if the first two counts of the complaint fail to state a claim for relief against either Kizzie of Fajana, then Plaintiffs' employers cannot be vicariously liable. For the reasons noted, the complaint is insufficient with respect to Kizzie and Fajana, and thus Plaintiffs' vicarious liability claim also fails.

**D.   Leave to Amend**

Plaintiffs' complaint is deficient in many respects.   It is unclear as to any specific services sought from Kizzie and RE/MAX that were refused, or any facts justifying an allegation that discriminatory animus was the reason.   Plaintiffs have not clearly delineated the specific section or sections of the FHA that they contend Defendants violated.   Furthermore, any FHA claim against Kizzie and RE/MAX is doubtful given Kizzie's earlier knowledge of Plaintiffs' races.   With regard to Fajana and Link Mortgage, the complaint is imprecise and needs to be clarified.   On the other hand, no realistic likelihood exists that Plaintiffs can adequately aver an Intentional Infliction of Emotional Distress claim, given its rigorous requirements under Maryland law.   While Plaintiffs have not sought leave to amend, they will be granted 15 days within which to file an Amended Complaint with regard to the FHA and related respondeat superior claims.   Plaintiffs are advised to be specific and concrete in their allegations and, if they choose to replead concerning Kizzie, the allegations of denial of services

13

and intent to discriminate must go beyond those in the initial complaint.

## IV.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted.  Plaintiffs will be granted 15 days within which to file an Amended Complaint concerning the FHA and respondeat superior claims.  A separate Order will follow.


                                             /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge